### KIP v. CITY OF BUFFALO.

*(Superior Court of Buffalo, General Term.  November 19, 1889.)*

1. MUNICIPAL CORPORATIONS—CIVIL SERVICE.

   Laws N. Y. 1884, c. 410, authorizing the mayor of each city to prescribe civil service rules, and to employ suitable persons to make inquiries and examinations, and prescribe their duties, gives the mayor power to designate a secretary for the civil service commission appointed by him under the act, and to fix his salary.

2. SAME—FEES.

   The charter of the city of Buffalo, tit. 5, § 1 *et seq.*, provides that the comptroller shall, on or before the 1st day of April in each year, furnish to the council a financial statement for the current year, together with an estimate of the current expenses of each department. Heads of departments are also required to furnish estimates of the amounts required by their respective departments for the current year. The council may amend such estimates, and are required to pass upon them not later than May 1st. The expenditures of each department are required to be kept within the estimates made for it; each office or purpose being debited with the whole sum appropriated, and credited with the salaries and other fixed sums to be paid therefrom, and "the other expenditures" are not to exceed the remainder of the estimate. Contracts for amounts exceeding such remainder shall not bind the city as to the excess. The mayor fixed the salary of the secretary of the civil service commission at $600 per annum, payable monthly, but the council only appropriated $50 for the expenses of the commission for the whole year. After paying all fixed expenses of the mayor's department, a balance remained to its credit of less than the amount of salary due the secretary. *Held,* that the latter could recover the $50 appropriated for the expenses of the commission, and the unexpended balance to the credit of the mayor's fund, but no more.

On demurrer to complaint.

Action by William F. Kip against the city of Buffalo, for his salary as secretary of the civil service commission of said city, for the period of six months.

Argued before BECKWITH, C. J., and HATCH and TITUS, JJ.

*Ansley Wilcox,* for plaintiff.  *Frank C. Laughlin* and *William F. Worthington,* for defendant.

BECKWITH, C. J.  This is an issue of law, raised by a demurrer to the complaint. The demurrer is upon the ground that it appears upon the face of the complaint that it does not state facts sufficient to constitute a cause of action. The plaintiff, by the allegations of his complaint, seeks to recover a judgment against the defendant for his salary as secretary of the civil service commissioners appointed by the mayor for the city of Buffalo. The contention on the part of the defendant is that the mayor had not power to bind the city for the payment of the plaintiff's salary. The charter, (title 5, § 9) provides that a contract by which a liability shall be attempted to be created against the city in excess of the annual appropriation for any department shall not be binding on the city for the amount contracted to be paid which is in excess of the appropriation. Section 8 of chapter 410 of the Laws of 1884, which is not an amendment of the charter, but a general law, directs

the mayor to "employ suitable persons" to conduct the inquiries and make the examinations prescribed as to the fitness of persons applying to enter the civil service of the city. It must be presumed that the legislature intended the statute to have effect, and it is considered that a power given by statute carries with it every incident absolutely necessary to give it operation. 1 Kent, Comm. 464. Such construction ought to be put upon a statute as does not suffer it to be eluded. THOMPSON, C. J., in *People* v. *Insurance Co.*, 15 Johns. 381. When, therefore, we find the statutes, called the "Civil Service Acts," directing the mayor to employ suitable persons, we conclude that they impliedly authorize him to agree upon a reasonable compensation for their services. The civil service acts are general statutes, operative on all the large cities of the state. Their mandate is directed to the mayor, in his official capacity, as the executive and agent of the city. As chief executive of the city, the mayor, in employing the suitable persons mentioned in the statute, enters into the contract on behalf of the city, and promises that the city will pay. Such power must therefore be deemed to be exercised with reference to the capacities of the municipal corporation, and the modes prescribed by the legislature for the exercise of its poweis. The power to contract for compensation was, consequently, limited by the provisions of the city charter respecting the raising of moneys for the public expenditures, and the disbursement of the same. We think, therefore, that, within the limitations of the charter as to the expenditures of the public moneys, the mayor had power to contract with the plaintiff for a compensation for his services.

The employment of the plaintiff as secretary of the civil service commission was treated by the mayor as belonging to his department of the city government. In the spring of 1887, according to the directions of the charter, when the time came to make up the estimates of the amount of money to be raised by taxation in order to carry on the city government, he sent to the comptroller an estimate of the sum required in order to secure the execution in this city of the civil service acts. He put the sum at $1,000. The comptroller included the same sum for that purpose in his estimate sent to the common council. The common council, on revising the estimates, reduced the sum for the civil service to $50. An allowance was therefore made for the civil service. But the common council fixed the estimate for the mayor's department at $6,825. It is alleged in the complaint that at the time the mayor employed the plaintiff there was a balance remaining of this fund, unexpended, of $395.18, and at the end of the fiscal year a balance of $201.38. The plaintiff was appointed secretary, at a salary of $50 a month, on the 20th day of September, 1887. The balance in the fund for the mayor's department was at that date sufficient to meet the obligation incurred by the employment of the plaintiff until the end of the fiscal year,—the 31st day of December, 1887. The common council estimated the expense of executing the civil service acts at $50; but I do not understand the charter to mean that an expenditure for a particular object shall not exceed the itemized sum set down therefor in the estimates of the comptroller, or of the common council. The item is the common council's estimate of the probable expense. It may be too much, or too little. The charter provides, in substance, that contracts, made in any department of the city government, for an amount in excess of the sum appropriated for the department, shall not be binding on the city, beyond the balance remaining to the credit of the department. The charter does not further annul contracts that are in excess, but provides that the excess may be recovered of the members of the common council. I understand the charter to mean that the city shall not be bound by any contract, though within the objects of the department, so far as the liability contracted is in excess of the appropriation. The plaintiff was not employed for any definite or stated period. He was simply appointed by the mayor to the position of secretary, at a salary of $600 per annum, payable in equal monthly payments. The plaintiff and the

mayor were bound to take notice of the provisions of the charter when they were contracting about the salary to be paid by the city; to take notice that the fund in the mayor's department could not be exceeded, and that a contract for services to be performed beyond the expiration of the fiscal year could not be legally made. The contract, by its terms, did not necessarily extend the employment beyond the fiscal year, and was therefore not void for that reason. But for the period of the employment, from the 20th of September to the end of the fiscal year, the balance remaining in the fund appropriated for the mayor's department being sufficient, we think the contract was valid.

Mr. Wilcox, in his argument, urged the court to put its decision on the broad ground that the civil service acts empowered the mayor to contract for their execution, and that such a contract, entered into by him, created a liability upon which judgment could be recovered against the city, independent of the question whether any fund had been provided for the purpose of paying and defraying the salaries and expenses attending the execution of those laws. We agree in the opinion, though not involved in the decision of the issue of law raised by this demurrer, that the mayor cannot bind the city in that manner. If the civil service acts impose a new burden of expense on the city, it is the duty of the common council to provide for it by taxation, and their neglect to perform their duty in that respect will not give to any city officer power to bind the city by contract in any mode different from that provided in the charter. The civil service acts are not so repugnant to the provisions of the charter that the latter can be said to be superseded for the sake of the civil service.

The complaint showing power in the mayor to contract with plaintiff for his services as secretary to the civil service commission, and to pay him a fair compensation, and showing that the fund in the mayor's department, unexpended at the date of entering into the contract with the plaintiff, was sufficient for the payment of the compensation agreed upon until the end of the fiscal year, we think a cause of action was stated, and, accordingly, that the demurrer must be overruled.

TITUS, J., concurs.

HATCH, J., (*concurring.*) So far as important for the disposition of the questions presented by this demurrer, the complaint alleges: *First.* That the defendant is a municipal corporation, duly organized, and is possessed of a population of over 200,000; that plaintiff is a citizen, a resident, and an elector of said city. *Second.* That Philip Becker is the mayor of said city, duly elected and qualified. *Third.* That in the month of January, 1886, the said mayor, pursuant to an act of the legislature of the state of New York, entitled "An act to regulate and improve the civil service of the state of New York," being chapter 354 of the Laws of 1883, as amended by chapter 410, Laws 1884, prescribed certain regulations for the admission of persons into the civil service of said city; that such rules and regulations were submitted to the civil service commission of the state of New York, then organized and existing according to law, for their approval, and the same, with certain amendments, were thereafter approved. *Fourth.* That rule 3, as amended and promulgated, provides: "For the purpose of conducting the inquiries and making the examinations mentioned in section eight of the said law, as amended, the mayor shall appoint fifteen suitable persons, citizens of Buffalo, not less than three or more than five of whom shall be physicians, who shall constitute the civil service commission of Buffalo,—hereinafter, for brevity, also called 'The Commission,'—and each member of which shall be known as a civil service commissioner of Buffalo; and, for the same purpose, shall also, upon the recommendation of the commission, employ a suitable person, who

shall act and be known as the secretary of the commission. * * * The commissioners shall serve without pay, and the mayor shall fix the salary of the secretary of the commission." The duty of the commission is then prescribed, with respect to conducting the examination of candidates to ascertain their fitness, and it is further provided: "The secretary shall keep minutes of their proceedings, and all necessary records of applicants, their examinations and standings, and a complete record of all persons employed in the several departments to which these rules apply, and of all appointments, promotions, dismissals, resignations, and changes of any sort therein; and shall render all such service, in connection with the conduct of the inquiries and examinations above mentioned, as may be required of him by the commission." *Fifth.* That at a regular meeting of the commission the plaintiff was by it recommended to the mayor for appointment as secretary; that thereupon, on the 20th day of September, 1887, said mayor employed, and in writing, under his hand and the seal of said city, appointed, the plaintiff as such secretary, and fixed his salary at the sum of $600 per annum, payable in equal monthly payments. *Sixth.* That on the same day plaintiff duly accepted such appointment, duly qualified, and entered upon the discharge of his duties. *Seventh.* That plaintiff continued in such employ, performing its duties, from September 20, 1887, to March 20, 1888, when he resigned. *Eighth.* Alleges the due presentation of his claim for salary under the said appointment to the common council of defendant, for audit, more than 40 days prior to the commencement of this action; that the same was not audited or paid, and now remains wholly unpaid. *Ninth.* That there is now due and unpaid the sum of $300, with interest; for which sum judgment is demanded.

The first question raised relates to the validity of rule 3, and the claim is made that, so far as it purports to confer authority upon the mayor to employ a secretary for said commission, it is unauthorized and void, by section 8 of the act creating the commission and authorizing the rule. Laws 1884, c. 410. So far as important here, it provides: "The mayor of each city in this state is authorized, and is hereby directed, to prescribe such regulations for the admission of persons into the civil service of such city as may best promote the efficiency thereof, and ascertain the fitness of candidates in respect to character, knowledge, and ability for the branch of the service into which they seek to enter; and for this purpose he shall from time to time employ suitable persons to conduct such inquiries and make examinations, and shall prescribe their duties." The contention is that the act only confers authority to employ examiners, and does not embrace secretaries for the examiners. We think this construction narrower than the statute contemplates. It proceeds upon the theory that only such persons as are technically called "examiners," who conduct the examinations, are meant; but, when the act is scrutinized, it is seen that its purpose is to provide for the examination and classification of a large number of persons, comprising a very large proportion of the civil list of the city. In order to accomplish such purpose effectually and intelligently, it is quite essential that records be kept, not alone of the minutes of the examination, but of the records and standing of the applicants, the persons employed in the several departments to which the act applies, together with such changes therein as from time to time occur, to the end that the labors of the commission may be effectivley rendered, with the object always in view of improving the service contemplated by the act. These duties are quite as necessary to be performed as the examination of the candidate. They are essential in determining the conclusion reached; and, with a large number of examinations, no conclusion could be intelligently arrived at without the *data* thus preserved. The language of the statute is, "employ suitable persons to conduct such inquiries and make examinations." It is not limited to examiners alone, but embraces persons suitable to conduct such inquiries. The proper conduct of the inquiries and examinations make

it quite as necessary that records should be kept, as heretofore suggested, as that examinations should be made. The only test of the right to employ is suitableness and necessity; not what the person so employed shall be called. We therefore think that the duties required of the commission also required the employment of a person to perform the duties of secretary, and that authority to employ such person is fairly embraced within the spirit, and is conferred by the terms, of the act. *Bird* v. *Mayor*, 33 Hun, 396, is not in conflict with this conclusion; for there the act conferred authority to appoint two commissioners of accounts, with specified and well-defined duties incumbent upon them to perform. There was no provision authorizing the employment of clerks, or other persons, to aid them; and the act itself, as well as its spirit, required the intelligence, experience, and judgment of the persons appointed. It was consequently held that, as there was no authority to employ clerks, so there was no authority to create a fund for their payment. In this case the work required not alone examinations, but such record of it as made the whole complete,—one as necessary in the conduct of the inquiry as the other. For such work, the act confers authority to employ a suitable person. The act authorizing the employment of a secretary, he became, by implication of law, entitled to reasonable compensation. *People* v. *Common Council*, 16 Abb. N. C. 110, 111, (affirmed at general term, fifth department, 38 Hun, 637.)

The right to employ being vested in the mayor, he had, undoubtedly, the authority to contract for reasonable compensation for the service to be rendered; but, while possessing this authority to contract, as it created a liability against the city, he could only contract with reference to the law governing the officers of the city, when creating liabilities and imposing burdens to be met and discharged by taxation. This act does not furnish or attempt to provide a new scheme by which the city may be charged with burdens independent of existing requirements of law, nor does it furnish any other or different method than such as is provided in other cases where contract liabilities are required to be imposed. Nor do we find any repeal of the law furnishing the method by which liabilities are created against the city, either in express terms, by implication, or repugnancy. We are therefore remitted to the statute which provides the requirements necessary to be observed in order to charge the city with liability. This is found in title 5 of defendant's charter, section 1 of which provides that the fiscal year shall begin upon the 1st day of January. Section 2 requires the comptroller, on or before the 1st day of April in each year, to furnish the common council with a detailed statement of the city's financial condition. And by section 4 he is required to further furnish, at said time, an estimate of the amount necessary to be raised by general tax, for the purpose of meeting all the expenses and liabilities of the city for the fiscal year; specifying in detail, and under separate and appropriate heads, the amount estimated for each department or office, or other purpose. Section 3 provides that the heads of the different departments shall, on or before the 1st day of March, deliver to the comptroller a detailed estimate of the expenses and amount of money required for their respective departments and offices for the fiscal year. Section 5 provides that the estimates furnished by the comptroller shall be entered at large upon the journal. Section 6 imposes a duty upon the common council, after the expiration of one week, to proceed and consider the same; and, by a vote of two-thirds of all the members elected, may alter or amend the same; and shall, on or before the 1st day of May, finally pass upon them. Section 7 provides that the sum total of the adopted estimate shall be raised by general tax. Section 9: "The expenditures for each department, office, or other purpose, during the fiscal year, shall be kept within the estimate made for it. For the purpose of this section, each department, office, or other purpose, shall be credited with the amount included in the estimate for it, and it shall be debited with the

salaries, and the certain and fixed sums to be paid out of it; and the other expenditures shall not exceed the balance remaining of the estimate.   Contracts made in any form or manner, for an amount exceeding such balance, shall not be binding on the city, beyond such balance.  *  *  *  If the treasurer shall knowingly pay a warrant on the treasury, drawn in violation of this section, he shall not be credited with the amount paid upon such warrant." This is the only provision of law providing the method by which liabilities of the character here sought to be imposed are authorized.   There are certain general and fundamental principles of law, which govern the creation of obligations against a municipal corporation, which must be observed.   It is only bound by the acts of its officers and agents when it manifestly appears that they are acting within the scope of their authority; and, where officers of the municipality fail to pursue, or exceed, the requirements of a statutory enactment under which they act, the corporation is not bound.   And persons dealing with an officer of the corporation are bound, at their peril, to take notice of the limitations of the power given by law; and, if a contract is entered into beyond its scope, it is void.   Dill. Mun. Corp. §§ 445–463, inclusive; *Lyddy* v. *Long Island City*, 104 N. Y. 223, 10 N. E. Rep. 155.

With these rules in mind, the complaint is to be examined.   Its substantial allegations in this regard are that the mayor did, on or before the 1st day of March, 1887, deliver to the comptroller a full and detailed estimate of the expenses and the amount of money required in his department for the fiscal year beginning January 1, 1887; that among such estimates was the sum of $1,000 for salaries and expenses of executing the civil service law; that the comptroller, on or before April 1, same year, presented his estimate to the common council of the amount necessary to carry on the city government,— which estimate included that for the mayor's department, embracing the said estimate for salaries and expenses for executing the civil service law; that the said council, on or before May 1, 1887, having previously considered the same, finally passed upon the same,—the item for salaries and expenses for executing the civil service law being reduced from the sum of $1,000 to $50, and, as so changed, was confirmed; that the aggregate amount of the estimates, as proposed by the mayor to the comptroller, and by the latter to the council, amounted to the sum of $7,275, and, as finally confirmed and adopted by the council, said sum was reduced to $6,825; that, after crediting the mayor's department with said last-named sum, and debiting it with salaries and fixed sums charged thereon, and with all other expenses which had been incurred at the time the contract was entered into, there remained to the credit of said department the sum of $395.18, and, of the whole sum appropriated, there remained at the end of the fiscal year a balance of $201.38 to the credit of the department.   By the terms of the appointment or contract, plaintiff was to receive $600 per annum, payable in equal monthly payments.   By the rules it was also provided that the mayor might at any time change the secretary, and appoint another person, upon notice to the commission, etc.   This, I think, gave notice to the person employed that his term was limited to the pleasure of the mayor. The appointment cannot, therefore, be construed into a holding for any particular period of time.   *Spring* v. *Clock Co.*, 24 Hun, 175; *Smith* v. *Railroad Co.*, 35 Hun, 204.   I am therefore of opinion that, under the appointment and the service, it created a liability against defendant to the extent of the sum appropriated by the common council.   I am also of opinion that the balance remaining to the credit of the mayor's department is also available for the purpose of payment upon this contract.   The language of the charter, after providing for the fixed sums and charges, is: "And the other expenditures shall not exceed the balance remaining of the estimate.   Contracts, made in any form or manner, for an amount exceeding such balance, shall not be binding on the city, beyond such balance."   This expenditure is not a certain and fixed sum with which the estimate is debited, but falls within that denom-

:inated "other expenditures," and the language used seems to leave such expenditures somewhat to the discretion of the head of the department, the limitation of expenditure being the amount of the aggregate appropriation.   Unless this construction obtain, then the above-quoted language of the charter becomes meaningless.   The complaint alleges the various items which go to make up the whole estimate, and they equal the aggregate sum appropriated. If, therefore, the construction be that no excess in any item can be expended for any other purpose of the department, it needed no language to limit the liability of the city to any balance which might remain; for the prohibition would be absolute against its expenditure, except for the specified purpose, and, consequently, it would be impossible to create any liability against the city, even though there was an excess in some one of the items.   I think such is not the construction of the section, but that the legislature contemplated that there might be a contingency where an estimate made was insufficient to meet the requirements, and that an appropriation might be made in an item in excess of its requirements; that, therefore, a discretion was vested in the head of a department, in such contingency, to apply the excess to the purpose of the deficient item; and that the city was sufficiently protected by a limitation of such expenditure to the total appropriated.   Otherwise, mandatory official duties might be rendered impossible of performance.   The contingency has arisen in this case.   The mayor, by express command contained in the act, is charged with the execution of the civil service law.   The sum appropriated proves insufficient.   Within the limits of a reasonable compensation for the service, and of the unexpended balance remaining to the credit of his department, he has the right to so apply it in the performance of his duty.   The claim, therefore, that no expenditure can be made, beyond the item appropriated by the council for that purpose, cannot be upheld.   The court is urged to invoke extraordinary powers, and hold this contract good beyond the balance remaining of the appropriation; and the argument is gravely advanced that it is the duty of the court to now direct the mayor to make necessary contracts for the enforcement of this statute, notwithstanding that no money is appropriated to meet their requirements, and by decision give them validity sufficient to establish the obligations thereby created as a debt against the city. It may be remarked that, if the court should adopt this recommendation, it would indeed be invoking its extraordinary powers,—so extraordinary, in fact, as to be properly characterized as usurpation.   Peremptory mandates of a statute may not be thus overridden, nor can liability be imposed upon a municipality by any power of the court.   In such proceeding as this, it can only decree liability to exist in a case where the law authorizes it.   This statute stands upon the same footing as any other, to be enforced by the persons charged with its enforcement.   The court must presume that those public officers charged with such duty will obey the law.   If they do not, legal remedies exist, both civil and criminal, as is clearly pointed out by Judge DANIELS in *People* v. *Common Council,* 16 Abb. N. C. 112–115, to enforce this statute.   But the law does not authorize or permit courts, or officers of a municipality, to violate fundamental principles of law, which find reason for existence in the general good of the public, and attempt to give force to a contract for the reason that the common council has violated, or that it is apprehended they will in the future violate, their duty with respect to it.   Such course would simply sanction a wrong because another wrong has been or may be committed.   It follows, from these views, that the demurrer should be overruled, with costs.